1
2
3
4
5
6
7
8                 UNITED STATES DISTRICT COURT
9                SOUTHERN DISTRICT OF CALIFORNIA
10

11   MICHAEL ANTHONY KNOX,              Case No.: 13cv2985 WQH (RBB)

12                        Plaintiff,    **REPORT AND**
                                        **RECOMMENDATION GRANTING**
13   v.                                 **IN PART AND DENYING IN PART**
                                        **DEFENDANTS' MOTION TO**
14   F. CASTANEDA et al,                **DISMISS COMPLAINT [ECF NO. 27]**

15                        Defendants.
16

17       Plaintiff Michael Anthony Knox, a former state prisoner proceeding pro se and in

18   forma pauperis, filed a Complaint pursuant to 42 U.S.C. § 1983 on December 11, 2013

19   [ECF Nos. 1, 22].  Knox alleges that while he was incarcerated at Calipatria State Prison

20   ("Calipatria") in April of 2013, Defendants Castaneda, Delgado, Enders, Mejia,

21   Whitman, and Hamilton ("Defendants") violated his rights under the Eighth and

22   Fourteenth Amendments by confining him to his cell, searching his cell and removing his

23   property, and forcing him to move to another cell.  (Compl. 1-14, ECF No. 1.)[1]  On

24   March 21, 2016, Defendants filed a "Motion to Dismiss Complaint" (the "Motion to

25   Dismiss") [ECF No. 27].  Plaintiff submitted a document he titled, "Plaintiff['s] motion

26

27   _____

28   [1]  The Court will cite to documents as paginated on the electronic case filing system.

                                        1

for defense and motion of objection to all of the [Defendants'] points of authority for concerning their [Defendants'] notice of motion and motion to dismiss complaint" (the "Opposition"), which was filed nunc pro tunc to April 6, 2016 [ECF No. 30].  On April 22, 2016, Defendants filed a Reply [ECF No. 32].

The Court has reviewed the Complaint and exhibits, the Motion to Dismiss, the Opposition, and the Reply.  For the reasons discussed below, Defendants' Motion to Dismiss [ECF No. 27] should be **GRANTED in part and DENIED in part**.

## I. BACKGROUND

The events that form the basis of Knox's Complaint began on April 16, 2013, while he was incarcerated at Calipatria.  (Compl. 1, ECF No. 1.)  Plaintiff contends that while in his cell that evening, he was approached by Defendant Hamilton.  (Id. at 4.) Hamilton told Knox to get up because he was going to be moved.  (Id.)  When Plaintiff asked why he was being moved and where he would be moved to, this Defendant stated that he did not know.  (Id.)  Hamilton left without giving Knox further information.  (Id.) He returned five to ten minutes later and asked Plaintiff if he was ready to leave.  (Id. at 4-5.)  Knox stated he was not ready because he had not bagged up his property yet.  (Id. at 5.)  Plaintiff alleges that Hamilton left again but returned about a minute later, stating, "'You are being moved off of A yard, because you have [an] "inmate enemy" on A yard.'"  (Id.)  Knox explained that he did not have any enemies on A yard and that he would not move until a "proper authority" explained to him why he "was being moved at such a strange and unusual hour."  (Id.)  Hamilton left again, but yelled back to Plaintiff after a minute that he no longer had to leave but would be confined to quarters because he had an enemy in the yard.  (Id.)  Knox responded that he would not be confined to quarters because he did not do anything justifying this type of discipline.  (Id.)

The following morning, Defendant Mejia approached Plaintiff's cell and told Knox that he would not be walking to breakfast because he was confined to quarters.  (Id. at 7.) When Knox asked why, Mejia said that he did not know, but he thought Knox had an enemy in the yard.  (Id.)  Plaintiff alleges that he tried to leave his cell to speak with

1  Defendant Castaneda when he was being served breakfast, but was ordered to return to
2  his cell, which he did.  (Id. at 7-8.)  Knox asked Castaneda why he was confined to
3  quarters, and Castaneda responded that Plaintiff had a known enemy in the yard.  (Id. at
4  8.)  Knox responded that he did not have any enemies in the yard, to which Castaneda
5  replied that he would look into this issue.  (Id.)

6      Later in the morning, an inmate kitchen worker approached Plaintiff's cell to
7  retrieve his breakfast tray.  (Id.)  Knox states, "I told him that I wouldn't return the
8  'breakfast tray' [until] the appropriate authority figure came and spoke to me, concerning
9  the exact reason I was being segregated and [confined to quarters]."  (Id.)  Ten minutes
10 later, Defendant Mejia approached Knox's cell and attempted to retrieve the breakfast
11 tray.  (Id.)  Plaintiff again said that he would not give the breakfast tray back until he was
12 told why he was being segregated.  (Id.)  Shortly after, Defendant Enders attempted to
13 retrieve the tray.  (Id. at 8-9.)  Knox again explained why he was keeping the tray.  (Id. at
14 9.)

15     Another correctional sergeant, who Knox believes is named Ibarra, approached
16 about fifteen minutes later.  (Id.)  When Plaintiff asked why he was confined to quarters,
17 this correctional sergeant replied that Knox had an inmate enemy on A yard.  (Id.)
18 Plaintiff told the sergeant that he did not have any enemies on the yard and that he had
19 been doing programming on A yard since March of 2013 without incident.  (Id.)  Knox
20 explained why he was holding onto the tray, to which Sergeant Ibarra responded that he
21 had just told Plaintiff why he was confined to quarters.  (Id.)  Knox responded, "'[M]an, I
22 need and want to see the [paperwork], stating and showing who is this supposed enemy
23 and when exactly did he become an enemy of mine.'"  (Id. at 9-10.)  The correctional
24 sergeant purportedly replied, "'[W]hat, do you expect me to pull it out my ass?'"  (Id. at
25 10.)  Plaintiff refused to surrender the breakfast tray.  (Id.)  Sergeant Ibarra then "turned
26 towards Correctional Officer G. [M]ejia and said, 'There won't be any program for this
27 building.'"  (Id.)  This meant "that Housing Unit A4 would not be allowed to go to the
28 scheduled morning yard on April 17, 2013."  (See id.)

Around 10:15 a.m. the same morning, Mejia approached Plaintiff to tell him that Defendant Delgado wanted to see him in the program office so Plaintiff could sign a "State of California:  Department of Corrections and Rehabilitations:  CDC – 1288(8—87):  Resolution Chrono, with inmate Robert Moore, CDCR#D – 98841." (Id.)  Knox notes that in September of 2011, he signed a similar form concerning inmate Moore and other inmates.  (Id.)  Plaintiff explains that since that time, he and Moore "were no longer deemed hostile towards each other, nor were we supposed to be deemed 'enemies.'" (Id. at 10-11.)  Knox went to the program office with Mejia, where he met Defendants Castaneda and Delgado, as well as a correctional counselor.  (Id. at 11.)  Plaintiff asked Delgado why he was confined to quarters.  (Id.)  Delgado answered that the day before, someone had said that Knox had a documented enemy on A yard.  (Id.)  Knox pressed Delgado for the name of the individual, but Defendant Delgado would not identify the person.  (Id.)  Plaintiff explained to Delgado that a prior review of Knox's "central" file showed that he had no inmate enemies; he was subsequently housed next to inmate Moore for two and a half weeks "without any hostile, negative altercations or incidents;" and that he had signed a Resolution Chrono regarding Moore in 2011 but was willing to sign another.  (Id. at 11-12.)  Plaintiff signed the form and returned to his cell.  (Id. at 12.)

Upon returning, Knox was told that Defendant Enders had conducted a search of his cell while Plaintiff was at the program office.  (Id.)  Knox approached Enders and asked why his cell had been searched.  (Id. at 12-13.)  Enders allegedly responded that the cell search was random.  (Id. at 13.)  When Knox entered his cell, he saw that four of his compact discs were missing.  (Id.)  He asked Enders why his compact discs were taken, to which Enders allegedly responded, "'If you want the CDs back you have to write "Receiving and Release", or 602 it.'"  (Id.)  Plaintiff was then given a cell search receipt, but the receipt identified the compact discs as belonging to someone else.  (Id.)  When Knox asked Enders why he had described the compact discs this way, this Defendant allegedly stated, "'Get away from the office Knox, before I give you [an] RVR (Rules Violation Report).'"  (Id.)

In the afternoon, Correctional Sergeant Garcia, who is not a party to the litigation, approached Plaintiff's cell.  (Id.)  Garcia and Knox discussed Plaintiff's signing the Resolution Chrono earlier in the day.  (Id. at 13-14.)  Garcia allegedly asked Plaintiff about a prior lawsuit Knox had filed against Correctional Officer Sustiata, which ultimately settled.  (Id.)  Plaintiff then asked, "'[W]as that what all this shit was all about?'"  (Id. at 14.)  Garcia responded, "'Yeah man.  I'm just being straight up with you[,]'" and then told Knox, "'It would be better if you just leave man.'"  (Id.)  Garcia left, and Plaintiff contends that he was then "[involuntarily] moved from A4 cell # 144 to B5 cell # 140."  (Id.)  Knox contends that because of his prior lawsuit against Sustiata, he was "systematically harassed, segregated and intimidated as reprisal, by all of the named correctional [personnel] at Calipatria State Prison, on 04/16/13 and 04/17/2013."  (Id.)  He seeks injunctive relief and $500,000 in damages.  (Id. at 16.)

## II.  DISCUSSION

### A.  Legal Standards

#### 1.    Standards applicable to pro se litigants

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt.  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases."  Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992) (citation omitted).  In giving liberal interpretation to a pro se civil rights complaint, courts "may not supply essential elements of the claim that were not initially pled."  Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."  Id.; see also Jones v. Cmty. Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).  "The plaintiff must allege with at least some degree of particularity overt acts which

defendants engaged in that support the plaintiff's claim." Jones, 733 F.2d at 649 (citation omitted) (internal quotation marks omitted).

Nevertheless, the court must give a pro se litigant leave to amend his complaint "'unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)).  Thus, before a pro se civil rights complaint may be dismissed, the court is required to provide the plaintiff with a statement explaining the complaint's deficiencies.  Karim-Panahi, 839 F.2d at 623-24 (citation omitted).  But where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate.  See James v. Giles, 221 F.3d 1074, 1077 (9th Cir. 2000).

### 2.    Motions to dismiss for failure to state a claim

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.  See Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 633 (1999).  A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The court accepts as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and construes the complaint in the light most favorable to the plaintiff.  Cholla Ready Mix v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (citing Karam v. City of Burbank, 352 F.3d 1188, 1192 (9th Cir. 2003)); Parks Sch. of Bus. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); NL Indus. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986) (citation omitted).

The court does not look at whether the "plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468

U.S. 183 (1984); see Bell Atlantic Corp., 550 U.S. at 563 n.8.  A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff."  Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); see also Cholla Ready Mix, 382 F.3d at 973 (stating that on a Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged" (quoting Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994))).  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

In addition, when resolving a motion to dismiss for failure to state a claim, courts may not generally consider materials outside of the pleadings.  Schneider v. California Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay Television v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the complaint."  Schneider, 151 F.3d at 1197 n.1.  This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6).  Id. (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993)).  "When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ."  Parks Sch. of Bus., 51 F.3d at 1484 (citing Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)).

//

//

### 3.     Stating a claim under 42 U.S.C. § 1983

To state a claim under § 1983, the plaintiff must allege facts sufficient to show that (1) a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C.A. § 1983 (West 2012); Shah v. Cty. of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986).

**B.     Discussion**

Defendants make several arguments in their Motion to Dismiss.  The Court addresses each argument below.

### 1.     Plaintiff's Eighth Amendment claim

Defendants first contend that "Plaintiff Fails to State an Eighth Amendment Claim Based on His Confinement to Quarters or Cell Transfer."  (Mot. Dismiss Attach. #1 Mem. P. & A. 12, ECF No. 27.)  Addressing the first requirement for stating a claim under the Eighth Amendment, they argue that "Plaintiff's Allegations Do Not State An Objectively Sufficiently Serious Deprivation."  (Id. at 13.)

> [T]he Complaint is silent as to any specific condition Plaintiff faced that might support his Eighth Amendment claim.  Rather, Plaintiff merely alleges that:  (1) he was confined to his cell for less than 24 hours; (2) his cell was searched; and (3) he was transferred to a new cell on a different yard at Calipatria.  These are neither abnormal inmate experiences, nor did they deprive Plaintiff "the minimal civilized measure of life's necessitates."

(Id.)

Regarding the second requirement for stating a claim under the Eighth Amendment, Defendants assert that "Plaintiff Fails to Allege Defendants Were Subjectively Aware of a Serious Risk of Harm to Plaintiff."  (Id. at 14.)  They contend that Knox has not plead any facts to show that Defendants were aware of a serious risk to Plaintiff and ignored it.  (Id.)  "For example, there are no allegations that Plaintiff was placed in danger when confined to his cell, or that he was placed in danger upon his

transfer to B yard."  (<u>Id.</u>)  Consequently, they urge that Knox's Eighth Amendment claim should be dismissed.  (<u>Id.</u>)

Although absent from his Complaint, in his Opposition Knox states that on April 16 and 17, 2013, he was maliciously attacked by "several CDCR employees."  (Opp'n 5, ECF No. 30.)  Yet, he does not identify the employees.  (<u>See id.</u>)  Plaintiff then addresses the allegations in his Complaint and describes the search of his cell by Defendant Enders "as a form of intimidation, which is a clear violation of my 8th Amendment [rights]."  (<u>Id.</u> at 7.)  Knox explains how Defendants' actions violated his rights.

> My property was [taken] by C/O Enders, to punish me for the 1983 civil complaint; case number 10-CV-2693.  That is clear retributive actions taken against me for the 1983 civil complaint that me and C/O Sustiata, settled.  I was [confined to quarters] not for my safety, or staff safety, or the institution[']s safety, but simply to harass and intimidate me.  Then I was [hastily] sent to B yard, because me and a staff member had had an altercation.  This transfer wasn't for the penological concerns, because originally I was being moved because I had a known Inmate enemy, this situation then changed into the idea that I was being moved to B yard because me and C/O Sustiata, had an altercation.

(<u>Id.</u> at 7-8 (internal quotations omitted).)  Plaintiff asserts he was moved to B yard because of his prior lawsuit against Sustiata and that the proffered reason for moving him was a fabrication.  (<u>Id.</u> at 8-9.)

Defendants respond that the Opposition fails to adequately refute their argument that Knox has not stated a claim under the Eighth Amendment.  (Reply 2, ECF No. 32.)  They argue that the Opposition merely reiterates the allegations in Plaintiff's Complaint, and they explain why the actions taken against Knox did not violate the Eighth Amendment.  (<u>Id.</u> at 2-3.)

> Again, as set forth in the moving papers, Plaintiff's cell confinement for less than twenty-four hours, his cell search, and his cell transfer are normal inmate experiences that do not deprive Plaintiff of "the minimal civilized measure of life's necessitates" in violation of the Eighth Amendment.  Further, to the extent Plaintiff contends he was intimidated or verbally

9

harassed by Defendants, such conduct without the use of force does not support an Eighth Amendment claim.

(Id. at 3 (citations omitted).)  Defendants conclude that "the Opposition fails to demonstrate that Plaintiff's short confinement in his cell, his cell transfer, or any verbal harassment, violated the Eighth Amendment."  (Id. at 4.)

Prison conditions do not violate the Eighth Amendment unless they amount to "unquestioned and serious deprivations of basic human needs" or of the "minimal civilized measure of life's necessities."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Wilson v. Seiter, 501 U.S. 294, 298 (1991) (reiterating the "minimal civilized measure of life's necessities" standard).  A prisoner must show defendants acted with deliberate indifference to a substantial risk of serious harm.  See Farmer v. Brennan, 511 U.S. 825, 847 (1994); Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  The Eighth Amendment also prohibits punishments that "'involve the unnecessary and wanton infliction of pain.'"  Estelle v. Gamble, 429 U.S. 97, 102-03 (1976).  Thus, while conditions of confinement often are restrictive and harsh, they must be consistent with legitimate penological objectives.  See Hudson v. Palmer, 468 U.S. 517, 548 (1984).  The Eighth Amendment is construed in light of the "evolving standards of decency that mark the progress of a maturing society."  Trop v. Dulles, 356 U.S. 86, 101 (1958).

To satisfy the requirements for an Eighth Amendment conditions-of-confinement claim, the prisoner must allege facts sufficient to show that a prison official's acts or omissions deprived him of the "minimal civilized measure of life's necessities" and that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."  Farmer, 511 U.S. at 834, 836 (citations omitted) (internal quotation marks omitted).  The prison official is only liable when two requirements are met:  one is objective, and the other is subjective.  Id. at 834, 838; see Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009).  First, the purported violation must be objectively "sufficiently serious."  Farmer, 511 U.S. at 834 (citing

Wilson, 501 U.S. at 298).  Second, the prison official must subjectively "know[] of and disregard[] an excessive risk to inmate health or safety."  Id. at 837.

Knox appears to allege that Defendants violated his Eighth Amendment rights by (1) confining him to his cell from April 16-17, 2013; (2) searching his cell and removing four compact discs; and (3) moving him out of A yard, all in retaliation for his prior lawsuit against Officer Sustiata.  (See Compl. 4-14, ECF No. 14.)  Plaintiff has not alleged with specificity how his confinement, which lasted twenty-four hours, rises to the level of an Eighth Amendment violation.  Rather, during Knox's confinement, which may have been for his safety, he was still provided meals and was taken to the program office to sign paperwork.  In his Complaint, Plaintiff has not alleged that he experienced "unquestioned and serious deprivations of basic human needs" or of the "minimal civilized measure of life's necessities."  Rhodes, 452 U.S. at 347.  His lack of specificity is fatal to his Eighth Amendment claim for being confined to quarters.  See Dixon v. Allison, No. 1:10–cv–02365–GSA–PC, 2014 WL 298592, at *5 (E.D. Cal. Jan. 27, 2014) (dismissing an Eighth Amendment claim where the "Plaintiff fail[ed] to allege how long he was confined to quarters, whether he was denied all outdoor exercise during his confinement, the extent of his physical and mental injuries, how his diet was inadequate, or how his confinement resulted in a need for surgery[]").

As a result, Knox's claim for violations of the Eighth Amendment arising from being confined to his cell should be **DISMISSED**.  Courts must give a plaintiff leave to amend a pleading unless he could not possibly cure the claim by asserting other facts.  Lopez, 203 F.3d at 1127.  A plaintiff should not be granted the opportunity to amend when doing so would be futile.  Gardner v. Martino, 563 F.3d 981, 990 (9th Cir. 2009).  Because it is unclear whether Plaintiff could amend his pleading to include further facts to state a claim under the Eighth Amendment for being confined to quarters, he should be given leave to amend this claim against all Defendants.

Regarding the search of Knox's cell, "[t]he Eighth Amendment protects prisoners from searches conducted only for 'calculated harassment.'"  Vigliotto v. Terry, 873 F.2d

1201, 1203 (9th Cir. 1989) (quoting Hudson, 468 U.S. at 530).  Some courts have granted

summary judgment and held that a single search of a cell is insufficient to rise to the level

of an Eighth Amendment violation where the inmate fails to show malice.  See id.

("Although pro se complaints are liberally construed, Vigliotto's failure to be more

specific leaves his claim resting only on the September 1983 search.  We hold this single

incident is insufficient to satisfy [Whitley v. Albers, 475 U.S. 312 (1986)]."); Grant v.

Fernandez, No. C 96–1788 TEH, 1997 WL 118257, at *2 (N.D. Cal. Mar. 5, 1997)

("Plaintiff . . . has failed to present any evidence that shows that the cell search at issue

was malicious or unrelated to prison needs . . . .  The alleged single cell search and threats

and harassment, were not, objectively, 'sufficiently serious' to violate the Eighth

Amendment." (quoting Farmer, 511 U.S. at 834)).  Similarly, defendants were entitled to

summary judgment because two cell searches did not violate the Eighth Amendment

where the plaintiff did not show malice.  See Lopez v. Spurgeon, No. C 13–0173

RMW(PR), 2015 WL 971704, at *4 (N.D. Cal. Mar. 3, 2015) ("Plaintiff has therefore

failed to present any evidence that shows that the cell searches at issue were malicious or

that they were of such a calculated nature that they constituted cruel and unusual

punishment.").

        In liberally construing Plaintiff's Complaint and Opposition, the Court finds that

he has sufficiently alleged that the search of his cell coupled with the confiscation of four

CDs was conducted "only for 'calculated harassment.'"  Vigliotto, 873 F.2d at 1203

(quoting Hudson, 468 U.S. at 530).  Knox asserts that Defendant Enders searched his cell

and removed his property while he was at the program office, (Compl. 12-13, ECF No.

1), and that this action was taken in retaliation for his prior civil rights lawsuit against

Sustiata, (Opp'n 7-8, ECF No. 30).  Accordingly, he has stated a claim under the Eighth

Amendment that Defendant Enders searched Knox's cell as a form of harassment.  Cf.

Grant, 1997 WL 118257, at *2.  Yet, Plaintiff does not allege that anyone else

participated in the cell search.  (See Compl. 12-13, ECF No. 1.)  As a result, he fails to

state a claim under the Eighth Amendment against the remaining Defendants based on

the search of his cell and removal of his property.  Consequently, the Motion to Dismiss Knox's claim under the Eighth Amendment arising from the cell search should be **DENIED** as to Defendant Enders but **GRANTED** as to the remainder of the Defendants. It is not clear whether Plaintiff could amend his pleading to state a claim against the remaining Defendants under the Eighth Amendment for the search of his cell.  (See Compl. 12-13, ECF No. 1; Opp'n 1-19, ECF No. 30.)  He should be given leave to amend.  See Lopez, 203 F.3d at 1127.

Last, Knox asserts that he was moved out of A yard because of his lawsuit against Correctional Officer Sustiata.  In his Complaint, Plaintiff asserts that he was moved from a cell in A yard to a cell in B yard because of his prior lawsuit against Sustiata.  (See Compl. 14, ECF No. 1.)  Yet, Knox does not allege that, as a result of this transfer, Defendants acted with deliberate indifference to a substantial risk of serious harm.  See Farmer, 511 U.S. at 847; Wallis, 70 F.3d at 1077.  In fact, Plaintiff does not allege any harm from his cell transfer.  Consequently, he fails to state a claim under the Eighth Amendment for Defendants' transferring him to a different cell, and this claim should be **DISMISSED**.  See Vega v. Nunez, No. LA CV 13–09530–VBF–E, 2014 WL 1873265, at *6 (C.D. Cal. May 8, 2014) ("Vega's complaint contains no allegation that either of the defendants knew of and then recklessly disregarded any risk of harm to him from the cell transfer, so this is another reason why he has not yet stated an Eighth Amendment claim.").  Because it is unclear whether he could amend his Complaint to include enough facts to state a claim against Defendants under the Eighth Amendment for his cell transfer, he should be given leave to amend.  See Lopez, 203 F.3d at 1127.

## 2.    Knox's Fourteenth Amendment claim

Next, the Defendants maintain that "Plaintiff Fails To Allege A Due Process Violation Under the Fourteenth Amendment."  (Mot. Dismiss Attach. #1. Mem. P. & A. 14, ECF No. 27.)  They make three arguments in support of this assertion.  (Id. at 15-16.) First, Defendants contend that "Plaintiff's Confinement to Quarters for Less Than 24 Hours Does Not Constitute Atypical or Significant Hardship."  (Id. at 15.)  Consequently,

this does not give rise to a protected liberty interest.  (<u>Id.</u>)  Second, the Defendants assert that Knox does not have a liberty interest in a particular cell assignment.  (<u>Id.</u>)  They argue that decisions regarding housing and transfers do not give rise to constitutional claims, (<u>id.</u> at 15-16 (citations omitted)), concluding that "Plaintiff cannot state a due process claim based on his transfer from one cell to another cell, especially a cell in the same prison[,]" (<u>id.</u> at 16).  Last, Defendants posit that "Defendant Ender's Confiscation of Plaintiff's Personal Property Does Not Give Rise to a Due Process Violation."  (<u>Id.</u>)  They explain that the California Tort Claims Act provides an adequate post-deprivation state remedy, precluding Knox from stating a constitutional claim.  (<u>Id.</u> (citations omitted).)

> Plaintiff responds to Defendants' arguments as follows:

> The 14th Amendment states that I have the right to enjoy every and any process designed by every and any United State of America.  When [the California Department of Corrections and Rehabilitation] denied me the opportunity to exercise the right of particular issue, they violated my right to enjoy my due process, which is given to me by the 14th Amendment.

(Opp'n 9, ECF No. 30.)  Knox addresses Defendants' argument that Plaintiff's confinement to his cell for less than twenty-four hours does not give rise to a due process violation by asserting that the Defendants' use of their authority under the color of law to intimidate, attack, humiliate, and deprive him of his belongings was an "atypical and a significant hardship."  (<u>Id.</u>)  He additionally contends that "using the color of the law to take retributive actions for the case I settled [against Officer Sustiata] is cruel and unusual and a denial of my due process right."  (<u>Id.</u> (internal citation omitted).)

In the Reply, Defendants argue that the Opposition does not adequately refute their argument that Plaintiff fails to state a claim under the Fourteenth Amendment.  (Reply 2, ECF No. 32.)  They contend that he merely reiterates his allegations from the Complaint, (<u>id.</u> at 2-3), and maintain that his arguments are unsupported by case law and should be disregarded, (<u>id.</u> at 4 (citing <u>Salter v. Hernandez</u>, No. 1:12–CV–01852–LJO–SAB, 2013 WL 323277, at *5 (E.D. Cal. Jan. 28, 2013))).  Moreover, to the extent that Knox's

statement that "Discrimination is against the law[,]" (Opp'n 3, ECF No. 30), can be construed as an equal protection claim, Defendants urge that the "Complaint lacks any factual allegations to show in what manner Defendants specifically discriminated against him[,]" (id. at 4 (citations omitted)).[2]

It is not clear whether Plaintiff asserts his Fourteenth Amendment claims as substantive due process or procedural due process claims.  The Court discusses either possibility, below.

### a.     Substantive due process

A plaintiff may not advance a substantive due process claim if "a particular Amendment 'provides an explicit textual source of constitutional protection'" against government misconduct.  Albright v. Oliver, 510 U.S. 266, 273 (1994) (Rehnquist, C.J., for plurality) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).  Courts may limit the inquiry to the amendment that more specifically addresses a plaintiff's claim in lieu of general notions of substantive due process.  See id. at 286 (Kennedy & Thomas, JJ., concurring) (refraining from evaluating petitioner's due process claim under § 1983 because his allegations could be addressed under the state's malicious prosecution law); Graham, 490 U.S. at 395 n.10 ("Any protection that 'substantive due process' affords convicted prisoners against excessive force is, we have held, at best redundant of that provided by the Eighth Amendment." (citing Whitley, 475 U.S. at 327)).

As discussed above and below, the First and Eighth Amendments already provide protections for Knox regarding the alleged misconduct by Defendants.  These protections preclude Plaintiff from pursuing a substantive due process claim.  See Albright, 510 U.S. at 273 (Rehnquist, C.J., for plurality) (quoting Graham, 490 U.S. at 395).  Accordingly, to the extent Knox asserts a substantive due process claim against Defendants, this claim should be **DISMISSED** without leave to amend.  See Easter v. CDC, 694 F. Supp. 2d

---

[2]  Because Plaintiff does not appear to assert a claim under the Equal Protection Clause, the Court does not address this argument.

15

1177, 1187 (S.D. Cal. 2010) (citations omitted) (finding that a plaintiff's due process claim was preempted by the Eighth Amendment where the plaintiff "attempted to raise a claim under the Eighth and Fourteenth Amendments based on the same conduct . . . . [b]ecause the Eighth Amendment provides an explicit source of protection from the type of conduct Plaintiff alleges[]").

   **b.**  **Procedural due process**

  "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." <u>Sandin v. Conner</u>, 515 U.S. 472, 483-84 (1995) (citing <u>Bd. of Pardons v. Allen</u>, 482 U.S. 369 (1987)). But the liberty interest protected by statute or regulation is generally limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 484. To plead a procedural due process violation, an inmate must allege that the challenged conduct "present[s] the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." <u>Id.</u> at 486.

  As with his claims under the Eighth Amendment, Plaintiff appears to argue that Defendants violated his Fourteenth Amendment rights when they (1) confined him to his cell from April 16-17, 2013; (2) searched his cell and removed compact discs; and (3) moved him to B yard. (<u>See</u> Compl. 4-14, ECF No. 14.) Regarding his confinement, the Court finds that Knox has failed to allege a violation of his procedural due process rights. "Prisoners do not have a liberty interest in remaining free from placement in administrative segregation." <u>Williams v. Janda</u>, No. 07cv1745 WQH (CAB), 2009 WL 112094, at *6 (S.D. Cal. Jan. 15, 2009) (citations omitted). As a result, Plaintiff has not demonstrated how being confined to his cell for a day constituted an "atypical and significant hardship in relation to the ordinary incidents of prison life." <u>Richardson v. Runnels</u>, 594 F.3d 666, 672 (9th Cir. 2010) (citations omitted) (allowing fifteen days of administrative segregation). Consequently, to the extent Knox alleges a procedural due process claim arising from being confined to quarters, this claim should be **DISMISSED** without leave to amend. <u>See</u> <u>Sherman v. Small</u>, Civil No. 10cv0290 IEG (POR), 2010

WL 2270993, at *3 (S.D. Cal. June 4, 2010) (citations omitted) ("Plaintiff only alleges that he was 'confined to quarters' for thirty one days and he lost unspecified privileges. Based on these facts, the Court finds that Plaintiff has failed to allege a liberty interest in remaining free of [administrative segregation] . . . ."); see also Resnick v. Hayes, 213 F.3d 443, 448-49 (9th Cir. 2000) ("[T]here is no allegation that Plaintiff's segregation in the [special housing unit] was materially different from those conditions imposed on inmates in purely discretionary segregation. . . . Plaintiff had no protected liberty interest in being free from confinement in the [special housing unit] pending his disciplinary hearing.").

Turning to the alleged search of Plaintiff's cell and removal of his property, "[h]aving one's cell searched does not constitute an atypical and significant hardship." Dixon v. LaRosa, No. 2:10–cv–1441 GEB KJN P, 2011 WL 3875806, at *18 (E.D. Cal. Aug. 31, 2011) (citing Mitchell v. Dupnik, 75 F.3d 517, 523 (9th Cir. 1996)); see also Wiley v. Kentucky Dep't of Corr., Civil Action No. 11–97–HRW, 2012 WL 5878678, at *11 (E.D. Ky. Nov. 21, 2012) ("[P]risoners have no protected liberty interest to be free from searches of their cells[.]" (citing Hudson, 468 U.S. 517)); Crump v. Prelesnik, No. 1:10–cv–353, 2010 WL 3516087, at *10 (W.D. Mich. Sept. 8, 2010) ("The search of a prisoner's cell is an ordinary part of prison confinement.  It falls far short of the sort of atypical or significant hardship protected by due process.  Accordingly, Plaintiff fails to state a procedural due process claim based on the cell search."); Banks v. Beard, No. 2:03CV659, 2006 WL 2192015, at *14 (W.D. Pa. Aug. 1, 2006) (citations omitted) ("As a matter of law, it cannot be said that the random act of guards threatening prisoners and/or engaging in cell searches constitutes an atypical and significant hardship . . . ."). Consequently, to the extent Knox alleges that his procedural due process rights were violated from the search of his cell, this claim should be **DISMISSED** without leave to amend.

Knox complains about the removal of his CDs, but "negligent deprivation of property by state officials does not violate the Fourteenth Amendment if an adequate

postdeprivation state remedy exists . . . ." <u>Hudson</u>, 468 U.S. at 519.  Even "an

unauthorized <u>intentional</u> deprivation of property by a state employee does not constitute a

violation of the procedural requirements of the Due Process Clause of the Fourteenth

Amendment if a meaningful postdeprivation remedy for the loss is available."  <u>Id.</u> at 533

(emphasis added).  For Knox, "California Law provides an adequate post-deprivation

remedy for any property deprivations."  <u>Barnett v. Centoni</u>, 31 F.3d 813, 816-17 (9th Cir.

1994) (citing Cal. Gov't Code §§ 810-895).  As a result, any procedural due process

claim premised on Defendant Enders removing Plaintiff's property fails as a matter of

law and should be **DISMISSED** without leave to amend.  <u>See</u> <u>Gordon v. Cate</u>, 633 F.

App'x 397, 398 (9th Cir. 2016) (unpublished memorandum disposition) (citations

omitted) ("The district court properly dismissed Gordon's due process claim regarding

his loss of property because Gordon had an adequate post-deprivation remedy under

California law.").

        Last, Defendants' decision to move Knox to B yard is not a basis for a Fourteenth

Amendment due process claim.  "[P]risoners generally have no constitutionally-protected

liberty interest in being held at, or remaining at, a given facility."  <u>Pratt v. Rowland</u>, 65

F.3d 802, 806 (9th Cir. 1995) (citing <u>Meachum v. Fano</u>, 427 U.S. 215 (1976)).

Additionally, they "generally have no liberty interest in a particular cell assignment."

<u>Samonte v. Frank</u>, Civil No. 05–00507 HG–KSC, 2007 WL 496775, at *10 (D. Haw.

Feb. 13, 2007) (citing <u>Pratt</u>, 65 F.3d at 806); <u>see also</u> <u>Williams v. Faulkner</u>, 837 F.2d 304,

309 (7th Cir. 1988) ("Williams has not relied on any Indiana statute or regulation limiting

the prison officials' discretion to transfer him to a different cellhouse.  Because we are

not aware of any such limitation, we hold that Williams cannot make any rational

argument in law or fact to support his due process claim."), <u>aff'd sub nom.</u> <u>Neitzke v.</u>

<u>Williams</u>, 490 U.S. 319 (1989).  Consequently, Plaintiff's claim that his procedural due

process rights were violated by his cell transfer should be **DISMISSED** without leave to

amend.  <u>See</u> <u>Luedtke v. Gudmanson</u>, 971 F. Supp. 1263, 1271 (E.D. Wis. 1997) (internal

citation omitted) ("[I]n count 12 the plaintiff alleges that he was moved from a regular

unit to the 'r-unit' in violation of his federal rights.  Prisoners do not have a liberty interest in remaining in a particular cell block or wing of the prison.  This claim is frivolous.").

### 3.    Plaintiff's First Amendment claim

Defendants additionally assert that "Plaintiff Fails to Allege Facts Showing Defendants Retaliated Against Him for Filing a Lawsuit."  (Mot. Dismiss Attach. #1. Mem. P. & A. 16, ECF No. 27.)  They make four arguments to support this assertion. (Id. at 17-20.)  First, the Defendants argue that Knox's transfer to B yard was for legitimate penological purposes.  (Id. at 17.)

> [R]ecords attached to the Complaint plainly show that Plaintiff was transferred to another cell because Plaintiff and a staff member 'had been involved in an altercation.'  The transfer was to 'avoid any possible problems for staff and for the safety and security of the institution.'  This same exhibit also shows Plaintiff was confined to quarters because 'extenuating circumstances' prevented Plaintiff's immediate transfer on April 16, 2013.  Plaintiff even concedes he was [confined to quarters] for his refusal to transfer cells, and not for filing a lawsuit.

(Id. (citations omitted).)  As a result, they conclude that maintaining the safety and security of the prison was a legitimate penological interest that justified transferring Knox.  (Id.)

Second, the Defendants contend that "Plaintiff's Transfer to Another Yard in the Same Prison Does Not Constitute An 'Adverse Action.'"  (Id. at 18.)  "Plaintiff does not contend that Calipatria's A and B yard are in any way different, or that his transfer to B yard caused him any harm, or might cause him harm."  (Id.)  Defendants further note that Knox had only been living on A yard for a few weeks before he was transferred to B yard.  (Id.)

Third, the Defendants assert that Plaintiff's "Vague Allegations of Conspiracy Amongst the Defendants Do Not Support a Retaliation Claim."  (Id.)  They maintain that he fails to allege an agreement among the Defendants to violate Knox's constitutional rights, (id. (citations omitted)), and they cite several examples of Knox's deficient

pleading, (id. at 18-20).  Plaintiff only alleges that Defendant Hamilton was on duty at the time the decision was made to transfer him to a different cell.  (Id. at 18-19 (citations omitted).)  From this, they conclude that Knox's allegations demonstrate a lack of involvement by Defendants Hamilton and Mejia.  (Id. at 19.)  Defendants additionally note that Plaintiff alleges that only Defendant Enders was involved in the search of Knox's cell and that there are no allegations against Defendant Whitman.  (Id.)  They further explain that Plaintiff has not connected Defendants Delgado and Castaneda to his cell transfer.  (Id.)

> As stated above, the original decision to transfer Plaintiff was allegedly made on April 16, 2013, and there are no allegations that either Defendants Delgado or Castaneda were on duty at that time.  Also, these Defendants met with Plaintiff about his enemy status and asked him [to sign] a CDC 128 confirming that he had no inmate enemies on A yard.  If, as Plaintiff appears to argue, the 'inmate enemy' reason for transferring Plaintiff was pretextual, then these Defendants would not have asked Plaintiff to sign off on the CDC 128. In fact, based on the exhibits attached to the Complaint, none of the Defendants actually knew the reason Plaintiff was being transferred— namely, he was involved in an altercation with a staff member.

(Id. (internal citation omitted).)  Defendants moreover argue that Knox's transfer took place three years after he filed his lawsuit against Sustiata and four months after that case settled and that these facts do not support a finding of retaliatory motive, particularly because none of the Defendants in this suit were parties to the prior suit.  (Id. at 19-20 (citing McCollum v. Cal. Dept. of Corr. & Rehab., 647 F.3d 870, 882 (9th Cir. 2011).)

Finally, the Defendants assert that "Plaintiff Fails to Allege Any Harm from Defendants' Conduct."  (Id. at 20.)  They explain that he has not alleged that his First Amendment rights were chilled or that he was harmed by the transfer.  (Id.)  They conclude that without an allegation of harm, his retaliation claim fails.  (Id.)

Knox makes several arguments in response.  (See Opp'n 6-7, 9-13, ECF No. 30.) First, he argues that if he was transferred from A yard to B yard because of an altercation with a staff member, the only explanation for why he was required to sign the Resolution

Chrono on April 17, 2016, is that California Department of Corrections and Rehabilitation ("CDCR") "staff tried to disguise their assault [of Knox], under the color of law."  (Id. at 6-7.)  He explains, "This is clear when CDCR, then changed their reasoning for my placement on B yard, by stating I wasn't attacked and moved off of A Yard, because of inmate enemy concerns, but I was moved because me and a CDCR staff had an altercation."  (Id. at 7.)

Plaintiff also contends that he has alleged facts to show retaliation.  (Id. at 9.) Knox states there was no legitimate correctional goal for the actions taken against him "other [than] to violate my American liberties and Rights."  (Id. at 10.)  Prior to being transferred to A yard, he was held in administrative segregation.  (Id.)  Plaintiff notes that before an inmate is transferred from administrative segregation to the general prison population, staff members check that the inmate "does not have any enemy concerns." (Id.)  "Administrative Segregation, would have not sent me to A yard, if I had any enemy concerns."  (Id.)  Knox reiterates that he was attacked by the A yard staff because of his prior lawsuit against Sustiata, "which was confirmed by me when CDCR admitted that I was moved off A-yard facility, because 'me and a staff member had an altercation.'" (Id.)

Plaintiff additionally argues that his cell transfer does constitute an adverse action because this transfer was not for legitimate penological reasons.  (Id. at 10-11.)  Instead, it was to punish him for filing his prior civil complaint.  (Id. at 11.)  Knox responds to Defendants' argument that A yard and B yard are not any different by stating that on April 30, 2013, after he had been transferred to B yard, Knox was sent to administrative segregation, causing additional harm.  (Id.)

Knox acknowledges the weakness of his conspiracy allegation but states that due to his incarceration, "it is impossible for me to be at the actual huddle of the CDCR employees involved in this case."  (Id. at 12-13.)  He reiterates that all Defendants acted in accord to retaliate against him for his lawsuit against Sustiata, explaining that "each //

person that attacked me is involved, no matter how small their role was in attacking me." (Id. at 12.)

Knox outlines Defendant Whitman's actions against him, stating, "Defendant [Whitman], is involved, because in order for me to be intra-facility transferred the captain of the respective yard must have a reason and then approve of the move." (Id.) Plaintiff similarly asserts that Defendants Delgado and Castaneda were involved by confining him to his cell for filing his lawsuit against Sustiata and by making him sign a Resolution Chrono with inmate Moore, despite the fact that the two are not enemies. (Id. at 13.) Knox further contends that the four months between settling the case against Sustiata and the actions taken by Defendants "is short and any educated and logical American [can] see the connection that I filed a 1983 Civil complaint against a CDCR staff member, so other CDCR staff member[s] can or will take it personal." (Id.) He concludes that his allegations support a conspiracy by Defendants against him for filing his lawsuit against Sustiata "because CDCR said I was moved off of A yard, because 'me and a staff member had an altercation.'" (Id.)

Defendants reiterate in the Reply that "Plaintiff's Vague Allegations of Retaliation are Speculative And Conclusory." (Reply 5, ECF No. 32.) Defendants reason that "an allegation that CDCR, or any other state agency, had an intent to retaliate against Plaintiff is purely hypothetical and not supported by any factual allegations." (Id.) They further contend that Plaintiff has not alleged a circumstantial connection between his lawsuit against Sustiata and Defendants' actions, such as alleging that Defendants had knowledge of the prior litigation. (Id.) Furthermore, even if they intended to punish Knox by transferring him, an intra-facility cell transfer, without more, is not an adverse action. (Id. at 6 (citations omitted).) Defendants dispute that Plaintiff's transfer to administrative segregation on April 30, 2013, for "Battery on an Inmate," was the result of his April 17, 2013 cell transfer. (Id. (citations omitted).) They conclude, "Plaintiff's Opposition fails to remedy the numerous deficiencies identified in Defendants' Motion to Dismiss regarding his First Amendment retaliation claim." (Id.)

The Constitution protects individuals who exercise their First Amendment rights from deliberate retaliation by government officials. See Vignolo v. Miller, 120 F.3d 1075, 1077-78 (9th Cir. 1997); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Because retaliation by prison officials may chill an inmate's exercise of his First Amendment rights, retaliatory conduct is actionable even if it would not otherwise rise to the level of a constitutional violation. See Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989). An inmate suing prison officials pursuant to § 1983 for retaliation must allege sufficient facts that show that (1) "the retaliated-against conduct is protected," (2) the "defendant took adverse action against plaintiff," (3) there is a "causal connection between the adverse action and the protected conduct," (4) the official's act "would chill or silence a person of ordinary firmness," and (5) the conduct does not further a legitimate penological interest. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citations omitted). A plaintiff can allege retaliatory intent with a timeline of events from which retaliation can be inferred. See id. (citations omitted). If the plaintiff's exercise of his constitutional rights was not chilled (factor four), he must allege that the defendant's actions caused him to suffer more than minimal harm. See Rhodes v. Robinson, 408 F.3d 559, 567-68 n.11 (9th Cir. 2005). But see Mendocino Envtl. Ctr. v. Mendocino Cty., 192 F.3d 1283, 1300 (9th Cir. 1999). The test is objective — whether an official's acts would "'chill or silence a person of ordinary firmness from future First Amendment activities.'" Mendocino Envtl. Ctr., 192 F.3d at 1300 (citation omitted).

At the outset, Knox does not explicitly state that he brings his claims under the First Amendment. (See Compl. 4-14, ECF No. 1.) Nevertheless, in liberally construing Plaintiff's allegations, the Court finds that he has stated a claim under the First Amendment against Defendant Enders for the search of his cell and removal of his property. "[T]he filing of a prison grievance or a civil rights lawsuit is protected conduct under the First Amendment." Chappell v. Fleming, No. 2:12–cv–0234 MCE AC P, 2014 WL 793986, at *4 (E.D. Cal. Feb. 26, 2014), report and recommendation adopted, No. 2:12–cv–0234 MCE AC P, 2014 WL 1270612 (E.D. Cal. Mar. 26, 2014). Because

Knox's prior litigation against Sustiata alleged violations of his civil rights, see Knox v. Sustiata, 10cv2693-JLS (MDD) (S.D. Cal. filed Dec. 30, 2010) (complaint), this first element of a retaliation claim has been met.

The second element has also been met.  "Adverse action is action that 'would chill a person of ordinary firmness' from engaging in that activity." Eusse v. Whitman, Civil No. 13cv0916–BEN (NLS), 2014 WL 8096214, at *3 (S.D. Cal. Dec. 23, 2014) (citing Pinard v. Clatskanie Sch. Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000)), report and recommendation adopted sub nom. Eusse v. Vitela, No. 13CV916 BEN (NLS), 2015 WL 1013774 (S.D. Cal. Mar. 9, 2015).  Plaintiff alleges that Defendants (1) confined him to his cell for twenty-four hours, (2) searched his cell and removed his property, and (3) moved him to another yard.  (See Compl. 4-14, ECF No. 14.)  These actions are sufficiently adverse that they would chill an ordinary person from filing a lawsuit.

Regarding the third requirement, a plaintiff must "show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision." Soranno's Gasco, Inc., 874 F.2d at 1314 (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  Knox contends that Correctional Sergeant Garcia told him that the actions taken against Plaintiff were because of his prior lawsuit against Sustiata.  (See Compl. 13-14, ECF No. 1.)  At the pleading stage, this alleged statement is sufficient to infer a causal connection between Plaintiff's protected activities and the actions taken against him by Defendants.

Next, "[a] prisoner may satisfy the fourth element by alleging harm, rather than chill." Franklin v. Scribner, No. 09cv1067–MMA (RBB), 2011 WL 1311743, at *6 (S.D. Cal. Apr. 4, 2011) (citing Pratt, 65 F.3d at 807; Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989)).  While Knox has not alleged how his constitutional rights were chilled, he does contend that he was "systematically harassed, segregated and intimidated as reprisal." (Compl. 14, ECF No. 1.)  This is sufficient.  See Pratt, 65 F.3d at 807 ("[I]t would be illegal for [California Department of Corrections] officials to

transfer and double-cell Pratt solely in retaliation for his exercise of protected First Amendment rights."). The fourth element has been met.

When considering the fifth and final requirement, Courts "should 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Id. (quoting Sandin, 515 U.S. at 482). Defendants assert that Plaintiff was transferred because of an altercation with a staff member. (Mot. Dismiss Attach. #1 Mem. P. & A. 17, ECF No. 27 (citation omitted).) It further appears from Knox's Complaint that he was confined to quarters because of his failure to comply when prison officials tried to move him out of A yard. (See Compl. 5, ECF No. 1.) An inmate's altercation with a staff member or another inmate is a legitimate penological reason for transferring Knox or confining him to his cell. As a result, Defendants' Motion to Dismiss Plaintiff's First Amendment claim with regard to his cell transfer and his confinement to his cell should be **GRANTED**. Because it is unclear whether Knox could amend his Complaint to include enough facts to state a First Amendment claim against Defendants for being confined to his cell and subsequently transferred, he should be given leave to amend. See Lopez, 203 F.3d at 1127.

Defendants have not, however, addressed what legitimate penological reasons existed for the search of Plaintiff's cell. Knox, on the other hand, contends that his property was taken as punishment for his prior lawsuit. (Opp'n 9, ECF No. 30.) Even so, Plaintiff has only alleged that Defendant Enders participated in the cell search. (See Compl. 12-13, ECF No. 1.) Consequently, Knox has stated a claim for First Amendment retaliation against Defendant Enders, but not against any of the other Defendants. Accordingly, Defendants' Motion to Dismiss Plaintiff's First Amendment claim with regard to his cell search should be **DENIED** as to Defendant Enders but **GRANTED** as to the remaining Defendants. It is not clear whether Knox could amend his Complaint to state a claim against the remaining Defendants under the First Amendment for the search of his cell. As a result, he should be given leave to amend. See Lopez, 203 F.3d at 1127.

25

### 4.    Knox's claims against Defendants in their official capacities

Defendants contend that "Plaintiff's Official Capacity Claims Must Be Dismissed." (Mot. Dismiss Attach. #1 Mem. P. & A. 20, ECF No. 27.) They explain that official capacity claims are another way of pleading an action against the state, and that such actions are barred under the Eleventh Amendment. (Id. at 20-21 (citations omitted).) "Accordingly, to the extent Plaintiff seeks to recover monetary relief from the Defendants in their official capacities, those claims should be dismissed." (Id. at 21.)

Not addressing the Eleventh Amendment, Knox responds that "[t]he defendants are being sued in their official and individual [capacity], because when the individuals used their job to attack me they used their official [capacity] to take revenge against me for filing my 1983 [lawsuit against Sustiata] . . . ." (Opp'n 13-14, ECF No. 30.) Plaintiff sued the Defendants in their official capacities because they "used the CDCR authority to disguise their criminal and maliciously acts against Michael Knox." (Id. at 14.) He clarifies, however, that his lawsuit is not a complaint against the State of California, but against the CDCR staff members who hid their criminal behavior behind their authority. (Id.)

Defendants respond that Knox does not meaningfully address their arguments regarding his official capacity claims. (Reply 8, ECF No. 6.) They argue that Plaintiff does not cite any law supporting his arguments, and they maintain that his claim for damages against them in their official capacities should be dismissed with prejudice. (Id. at 6-7.)

The Eleventh Amendment grants the states immunity from private civil suits. U.S. Const. amend. XI; Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1040 (9th Cir. 2003). It also provides immunity for state officials sued in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). "As such, it is no different from a suit against the State itself." Id. (citing

Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 n.55 (1978)).  "The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity."  Antoine v. Byers & Anderson, 508 U.S. 429, 432 (1993) (footnote omitted).

Knox sues all six Defendants in their individual and official capacities, and he seeks monetary damages.  (Compl. 2-3, 16, ECF No. 1.)  A claim for damages is properly alleged against the Defendants in their individual capacities.  See Graham, 473 U.S. at 166.  But claims against them in their official capacities are claims against the State of California, which is absolutely immune from liability for damages.  See Will, 491 U.S. at 71.  Accordingly, his claims for damages against the Defendants in their official capacities should be **DISMISSED** without leave to amend.

### 5.    Plaintiff's claim for injunctive relief

In their Motion to Dismiss, the Defendants argue that "Plaintiff's Claims for Injunctive Relief Are Moot Because He Is No Longer Incarcerated by CDCR."  (Mot. Dismiss Attach. #1 Mem. P. & A. 21, ECF No. 27.)  Because Knox was released from custody on or about February 17, 2015, (id. (citation omitted)), Defendants request that his claim for injunctive relief be dismissed with prejudice, (id. at 21-22).

Plaintiff responds that he seeks injunctive relief because as part of his prior settlement with Sustiata, CDCR staff agreed to not take retributive actions against him for filing that lawsuit.  (Opp'n 14, ECF No. 30.)  He asserts that Defendants did not comply with that provision of the settlement.  (Id.)  Knox further contends that his release from prison does not make his claim for injunctive relief moot "because the fact remains that I still had to endure all [of] the brazen attacks dispensed against my person by the defendants."  (Id. at 16.)

In the Reply, Defendants argue that "Plaintiff's contention that his release from prison does not moot his injunctive relief claim because he endured the attacks and he will never forget it is not a substantive or meaningful response to Defendants'

//

1  arguments." (Reply 7, ECF No. 32 (internal citation omitted).) As a result, they request

2  that Knox's claim for injunctive relief be dismissed with prejudice. (Id.)

3        Article III, section 2 of the United States Constitution provides federal courts with

4  jurisdiction over an actual case or controversy. U.S. Const. art. III, § 2. This case or

5  controversy requirement applies to all stages of federal judicial proceedings, trial and

6  appellate. Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis v. Cont'l Bank Corp.,

7  494 U.S. 472, 477-78 (1990)). Accordingly, "parties must continue to have a personal

8  stake in the outcome of the lawsuit[.]" Lewis, 494 U.S. at 477-78 (internal quotation

9  marks omitted) (quoting Los Angeles v. Lyons, 461 U.S. 95, 101 (1983)); see also Preiser

10  v. Newkirk, 422 U.S. 395, 401 (1975). "'This means that, throughout the litigation, the

11  plaintiff "must have suffered, or be threatened with, an actual injury traceable to the

12  defendant and likely to be redressed by a favorable judicial decision."'" Burnett v.

13  Lampert, 432 F.3d 996, 999 (9th Cir. 2005) (quoting Spencer, 523 U.S. at 7). If a party

14  does not have a concrete and continuing injury, or suffer from some collateral

15  consequence, the claim is moot. Spencer, 523 U.S. at 7-8.

16        The actions that form the basis of Plaintiff's lawsuit took place in April of 2013.

17  (Compl. 1, ECF No. 1.) Knox has not alleged any wrongdoing by Defendants since

18  2013, and he is no longer incarcerated. (See Not. Address Change 1, ECF No. 6.)

19  Without an exception to the mootness doctrine, Plaintiff's claim for injunctive relief

20  cannot survive. See Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995) ("The defendants

21  argue that this case is moot. We agree. Since the district court granted injunctive relief

22  in this case, Dilley has been transferred from Calipatria to another California state

23  prison."). Knox does not argue that any exceptions to the mootness doctrine apply to his

24  case, and his arguments in the Opposition are unpersuasive. As a result, Plaintiff's claim

25  for injunctive relief against the Defendants should be **DISMISSED** without leave to

26  amend.

27  //

28  //

### 6.   Qualified immunity

Defendants next assert that they are entitled to qualified immunity.  (Mot. Dismiss Attach. #1 Mem. P. & A. 22, ECF No. 27.)  They contend that they have demonstrated that Plaintiff does not allege a violation of any constitutional right.  (Id.)  The Defendants urge that the qualified immunity analysis should be resolved in their favor.

> While Plaintiff claims that Defendants violated his Eighth and Fourteenth Amendment rights based on his confinement to quarters for a day and intra-facility transfer, [Defendants] could not find any case that would have provided "fair warning" that confining Plaintiff to his cell for less than 24 hours, and transferring him to a cell on a different, non-administrative segregation yard would give rise to either an Eighth Amendment or Fourteenth Amendment violation.  In fact, the Supreme Court has stated that "the decision where to house inmates is at the core of prison administrators' expertise."

(Id. at 23 (quoting McKune v. Lile, 536 U.S. 24, 39 (2002).)  There is no clearly established, case-specific right to the contrary.  (Id.)  Defendants further reiterate that Knox was transferred to maintain the safety and security of the prison due to Plaintiff's prior altercation with a staff member.  (Id. (citation omitted).)

Knox responds that "[n]one of the defendants can receive immunity, because they all consciously attacked me and violated my United States Constitutional right with the intent to cause me mental, physical and emotional harm."  (Opp'n 17, ECF No. 30.)  As a result, he argues Defendants should be held accountable.  (Id.)  Plaintiff maintains that if they are granted qualified immunity, Defendants will be able to attack any American citizen at their discretion.  (Id.)  In the Reply, Defendants indicate that they "rest on their arguments that they are entitled to qualified immunity because they could not reasonably believe that confining Plaintiff in his cell for less than twenty-four hours, or transferring him to a cell on a non-segregation yard, violates the Eighth or Fourteenth Amendment."  (Reply 7, ECF No. 32.)

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established

at the time of the challenged conduct." <u>Reichle v. Howards</u>, 566 U.S. ___, ___, 132 S. Ct. 2088, 2093 (2012) (citation omitted).  When considering a claim for qualified immunity, courts engage in a two-part inquiry:  Do the facts show that the defendant violated a constitutional right, and was the right clearly established at the time of the defendant's purported misconduct?  <u>See</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009).

"The plaintiff bears the initial burden of proving that the right was clearly established." <u>Sweaney v. Ada Cty., Idaho</u>, 119 F.3d 1385, 1388 (9th Cir. 1997) (citation omitted).  A right is clearly established if its contours are so clear that in the situation confronted, a reasonable official would understand that his conduct violated that right. <u>Dunn v. Castro</u>, 621 F.3d 1196, 1199-1200 (9th Cir. 2010).  This standard ensures that government officials are on notice of the illegality of their conduct before they act and are subjected to suit.  <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ." <u>Id.</u> (citation omitted).

"[L]ower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011) (citing <u>Pearson</u>, 555 U.S. at 236).  "An official is entitled to summary judgment on the ground of qualified immunity where his or her 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>James v. Rowlands</u>, 606 F.3d 646, 650 (9th Cir. 2010) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).

Courts should attempt to resolve this threshold immunity question at the earliest possible stage in the litigation "before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" <u>Ashcroft</u>, 563 U.S. at 735 (quoting <u>Pearson</u>, 555 U.S. at 236-37).  "If no constitutional violation is shown, the inquiry ends." <u>Cunningham v. City of Wenatchee</u>, 345 F.3d 802, 810 (9th Cir. 2003) (citation omitted).

Qualified immunity protects an officer who makes a decision that, even if constitutionally deficient, is based on a reasonable misapprehension of the law governing the circumstances. Brosseau v. Haugen, 543 U.S. 194, 198 (2004); see also Saucier v. Katz, 533 U.S. 194, 206 (2001) ("Qualified immunity operates . . . to protect officers from the sometimes 'hazy border between excessive and acceptable force[]' . . . ." (quoting Priester v. Riviera Beach, 208 F.3d 919, 926-27 (11th Cir. 2000))), abrogated in part on other grounds by Pearson, 555 U.S. at 236. The inquiry is whether the officer knew his conduct was unlawful, and "reasonableness is judged against the backdrop of the law at the time of the conduct." Brosseau, 543 U.S. at 198. If at the time, the law did not clearly establish that the conduct violated the Constitution, the officer should not be subject to liability. Id.

The Court has recommended that Knox's claims under the Fourteenth Amendment, his claim against Defendants for damages in their official capacities, and his claim for injunctive relief be dismissed without leave to amend. With respect to these claims, the qualified immunity inquiry may end here. Ashcroft, 563 U.S. at 735; Pearson, 555 U.S. at 236; Rowlands, 606 F.3d at 651. Regarding Plaintiff's remaining claims, the Court has recommended that most of these claims be dismissed with leave to amend. For these claims, any discussion of qualified immunity is premature until, and if, Knox amends his Complaint. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 793-94 (2nd Cir. 2002) (explaining in the context of a Rule 16(b)(6) motion, that ruling on qualified immunity would be premature because the issue "turns on factual questions that cannot be resolved at this stage of the proceedings[]"); George v. Uribe, Civil No. 11cv70 JLS (RBB), 2012 WL 993254, at *15 (S.D. Cal. Feb. 17, 2012); Lambert v. Martinson, Civil No. 10cv01978 JLS(RBB), 2011 WL 7478283, at *12 (S.D. Cal. Dec. 7, 2011). Consequently, Defendants' Motion to Dismiss based on qualified immunity should be **DENIED** without prejudice as premature.

//

//

### 7.    Plaintiff's prayer for $250,000

Finally, the Defendants assert that "Plaintiff's Request for $250,000 in Damages Should Be Stricken from the Complaint."  (Mot. Dismiss Attach. #1 Mem. P. & A. 24, ECF No. 27.)  They argue that Knox is precluded under the Prisoner Litigation Reform Act ("PLRA") from requesting damages without a showing of physical injury.  (Id. (citations omitted).)  "Here, Plaintiff alleges no physical injury arising from the Defendants' conduct.  Accordingly, Plaintiff is entitled to, at most, nominal damages in the amount of $1.00."  (Id.)  Knox responds that "[t]he sum requested of $250,000.00, is not a 'PRAYER', as stated by the defendants['] lawyers, but it is quite small considering all of the attacks and violations to my American Constitutional rights."  (Opp'n 19, ECF No. 30.)  In the Reply, Defendants argue that the Opposition fails to address that Plaintiff's "lack of physical injury limits his compensatory damages to nominal damages. As such, Defendants rest on the arguments set forth in their Motion to Dismiss that Plaintiff's request for $250,000 in compensatory damages be stricken from the Complaint."  (Reply 7, ECF No. 32.)

The PLRA provides the following limitation on damages for mental and emotional distress:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

42 U.S.C.A. § 1997e(e) (West Supp. 2016).  In Oliver v. Keller, the Ninth Circuit clarified "that for all claims to which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant but must be more than de minimis."  289 F.3d 623, 627 (9th Cir. 2002) (footnote omitted).  But the appellate court provided two important limitations on this rule.  First, the Ninth Circuit explained that this section "applies only to claims for mental and emotional injury."  Id. at 630.  As for appellant Oliver, the court held, "To the extent that appellant's claims for compensatory,

32

nominal or punitive damages are premised on alleged Fourteenth Amendment violations, and not on emotional or mental distress suffered as a result of those violations, § 1997e(e) is inapplicable and those claims are not barred." Id.  Second, the Ninth Circuit noted that First Amendment claims provide another exception.

> In Canell v. Lightner, 143 F.3d 1210 (9th Cir. 1998), we refused to apply § 1997e(e)'s prior physical injury requirement to a § 1983 action alleging violation of a prisoner's First Amendment rights because "deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from the physical injury he can show, or any mental or emotional injury he may have incurred . . . regardless of the form of relief sought."  Nothing in our holding today disturbs our prior holding in Canell.

Id. at 628 n.5 (internal citation omitted).

Applying these principles to Knox's litigation, Defendants' arguments are overly simplistic.  Plaintiff's claims for violations of the First Amendment are not subject to the physical injury requirement.  Id.  As a result, Defendants' request that the $250,000 damages amount in his Complaint be stricken should be **DENIED** with prejudice as to Knox's First Amendment claim.  Further, the Court has recommended that Knox's Fourteenth Amendment claims be dismissed without leave to amend.  Consequently, Defendants' request that Plaintiff's damages amount be stricken should be **DENIED** as moot as to Knox's Fourteenth Amendment claim.

Regarding Plaintiff's Eighth Amendment allegations, the Court has recommended that Knox's deliberate indifference claims arising from his confinement and his cell transfer be dismissed with leave to amend for Knox's failure to allege harm.  The Court has also recommended that Plaintiff's Eighth Amendment claim arising from his cell search be dismissed with leave to amend as to all Defendants except for Defendant Enders.  With regard to those claims, Defendants' request that Knox's damages claim be stricken should be **DENIED** as moot and without prejudice.  If Plaintiff amends his Complaint to allege injury from Defendants' actions in confining him to his cell and transferring him, the Defendants may reassert their motion to strike at that time.

Addressing Knox's Eighth Amendment claim against Enders arising from the search of his cell, the PLRA would only bar Plaintiff from asking for emotional injury damages with regard to this claim due to his failure to allege physical injury.  See Oliver, 289 F.3d at 630; see also Bodnar v. Riverside Cty. Sheriff's Dep't, No. EDCV 11–291–DSF (OP), 2014 WL 2737815, at *6 (C.D. Cal. Mar. 28, 2014) ("Plaintiff may proceed with his claims for compensatory and punitive damages based on his constitutional claim.  Thus, to the extent that Plaintiff alleges emotional injury, his claim is barred by § 1997e(e).  However, to the extent that Plaintiff presents a pure constitutional violation, § 1997e(e) is inapplicable."), report and recommendation adopted, No. EDCV 11–291–DSF (OP), 2014 WL 2741070 (C.D. Cal. June 16, 2014).  Knox's claim against Defendant Enders appears to allege a pure constitutional violation.  Moreover, because it is not clear to what extent Plaintiff's damages figure derives from his Eighth Amendment claim as opposed to his First Amendment claim, Defendants' request that Plaintiff's damages claim be stricken should be **DENIED** with regard to Knox's Eighth Amendment claim against Enders arising from his cell search.

### III.  CONCLUSION AND RECOMMENDATION

For the reasons discussed above, Defendants' Motion to Dismiss [ECF No. 27] should be **GRANTED in part and DENIED in part**.  Plaintiff's claim for violations of the Eighth Amendment arising from being confined to quarters and being transferred should be **DISMISSED** with leave to amend.  The Motion to Dismiss Knox's claim under the Eighth Amendment for the search of his cell should be **DENIED** as to Defendant Enders, but this claim should be **DISMISSED** with leave to amend as to the remainder of the Defendants.  Plaintiff's claims under the Fourteenth Amendment should be **DISMISSED** without leave to amend.  Defendants' Motion to Dismiss Knox's First Amendment claim with regard to his cell transfer and being confined to quarters should be **GRANTED** with leave to amend.  The Motion to Dismiss Plaintiff's First Amendment claim as to his cell search should be **DENIED** as to Defendant Enders and **GRANTED** as to the remaining Defendants with leave to amend.

Knox's claims for damages against the Defendants in their official capacities should be **DISMISSED** without leave to amend.  Plaintiff's claims for injunctive relief against the Defendants should be **DISMISSED** without leave to amend.  Defendants' Motion to Dismiss based on qualified immunity should be **DENIED** without prejudice as premature.  Their request that the $250,000 damages amount in the Complaint be stricken should be **DENIED** with prejudice as to Knox's First Amendment claim.  This request should be **DENIED** as moot as to Knox's Fourteenth Amendment claim and **DENIED** with regard to Knox's Eighth Amendment claims.

The Clerk of Court should be directed to terminate Plaintiff's "motion for defense and motion of objection to all of the [Defendants'] points of authority for concerning their [Defendants'] notice of motion and motion to dismiss complaint" [ECF No. 30].

This Report and Recommendation will be submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before December 17, 2016.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed on or before December 30, 2016.

The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991)

IT IS SO ORDERED.

DATED:  November 17, 2016

Hon. Ruben B. Brooks
United States Magistrate Judge

cc:    Judge Hayes
       All Parties of Record