UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANTHONY KNOX,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>F. CASTANEDA, et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 13cv2985-WQH(RBB)<br><br>**REPORT AND RECOMMENDATION GRANTING DEFENDANT ENDERS'S MOTION FOR SUMMARY JUDGMENT**<br>**[ECF NO. 50]** |

Plaintiff Michael Anthony Knox ("Plaintiff" or "Knox"), a state prisoner proceeding pro se and in forma pauperis, filed a Complaint pursuant to 42 U.S.C. § 1983 on December 11, 2013 [ECF No. 1]. Plaintiff alleged that while incarcerated at Calipatria State Prison ("Calipatria"), Defendants Castaneda, Delgado, Enders, Hamilton, Mejia, and Whitman, all correctional officers with the California Department of Corrections and Rehabilitation ("CDCR"), violated his rights under the First, Eighth, and Fourteenth Amendments by confining him to his cell, searching the cell, removing his personal property, and forcing him to move to another cell in retaliation for Plaintiff having filed a civil case against another correctional officer. (See Compl. 1-14, ECF No. 1.)[1]

---

[1] The Court cites to documents as paginated on the electronic case filing system.

1

On March 21, 2016, all defendants moved to dismiss Plaintiff's Complaint for failure to state a claim [ECF No. 27]. The Court issued a Report and Recommendation Granting in Part and Denying in Part Defendants' Motion to Dismiss on November 17, 2016 [ECF No. 34]. On March 10, 2017, the Honorable William Q. Hayes adopted the Report and Recommendation, dismissed Plaintiff's Eighth and Fourteenth Amendment claims against all defendants, the First Amendment claim as it related to Plaintiff's cell transfer and being confined to quarters against all defendants, and the First Amendment claim as to the cell search against Defendants Castaneda, Delgado, Hamilton, Mejia, and Whitman [ECF No. 37]. Plaintiff did not move to amend his Complaint. As a result, the only claim remaining in this action is Knox's First Amendment retaliation claim against Defendant Enders in connection with the cell search. (Id.)

On August 16, 2018, Enders filed a Motion for Summary Judgment [ECF No. 50]. The Court provided a briefing schedule and notice to Plaintiff under Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1998) [ECF Nos. 51, 52]. Neither an opposition to Defendant's motion nor a reply were filed.

Having carefully considered the record as submitted, and for the reasons discussed below, Defendant Enders's Motion for Summary Judgment should be **GRANTED**.

## I. FACTUAL BACKGROUND

Plaintiff's factual allegations regarding his cell transfer and being confined to quarters are set forth at length in the prior Report and Recommendation and need not be repeated in detail here. The Court instead recounts the facts in the record which give context and relate to the search of Plaintiff's cell by Defendant Enders.

On April 16, 2013, Plaintiff Knox was incarcerated at Calipatria in A-Yard, Building 4, cell number 144 ("A4-144"), and Correctional Officer Enders was assigned as a housing unit floor officer for that building. (See Mot. Summ. J. Attach. #3 Gibson

Decl. Ex. 1, at 14-15 (Knox Dep.), ECF No. 50; Id. Attach. #4 Enders Decl. at 2.) Knox did not have a cellmate and had been housed in A4-144 for only one to four days. (Id. Attach. #3 Gibson Decl. Ex. 1, at 15 (Knox Dep.).) Before that, he was in cell A3-103 for about a week, and had been transferred from C-Yard to A-Yard prior to that. (Id. at 15-16.) Plaintiff alleges that around 9:30 p.m., Correctional Officer Hamilton approached him and told him he was being transferred. (Id. at 17.) Plaintiff demanded to know why he was being forced to move at such an unusual time. (Id. at 18.) Hamilton checked with the correctional officers' office and informed Knox he was being moved off of A-Yard because he had an inmate enemy on that yard. (Id. at 19.) Plaintiff believed he had no enemies on A-Yard and refused to transfer. (Id.) Hamilton informed Knox he would be confined to quarters. (Id.) The following morning, a breakfast tray was delivered to Plaintiff in his cell. (Id. at 20.) Knox refused multiple requests to return the tray, including a request by Defendant Enders. (Id. at 22, 24.) This was the first time he had ever interacted with Enders. (Id. at 27.) Plaintiff was subsequently taken to the "program" office. (Id. at 25.) There, a correctional sergeant asked Knox to sign an "enemy compatible list slip" with his enemy. (Id. at 26.) Plaintiff stated he had previously signed a compatible slip with this enemy, but went ahead and signed a second one. (Id.)

Upon returning to A4-144, Plaintiff learned Defendant Enders had searched his cell. (Id. at 28.) Enders provided Knox a Cell/Locker Search Receipt. (Id. at 28, 30; Compl. 22, ECF No. 1.) While in the cell, Defendant retrieved Plaintiff's breakfast tray and confiscated four compact discs ("CDs") and a Sony Walkman CD player. (Compl. 22, 32, ECF No. 1.) The search receipt indicated the CDs belonged to other inmates and that Plaintiff was not permitted to have electronics or CDs in his cell due to his "C/C status." (Id. at 22.) "C/C status" is the most restrictive level of C status and bars inmates from possessing any appliances or musical instruments. (Mot. Summ. J. Attach. #4 Enders Decl. at 3, ECF No. 50); see also Cal. Code Regs., tit. 15, § 3190(l)(2) (2018). Plaintiff acknowledges he was on "C status" at the time of this incident. (Mot. Summ. J.

Attach. #3 Gibson Decl. Ex. 1, at 32 (Knox Dep.), ECF No. 50.) When Knox asked Enders why the CDs had been taken, as they belonged to him and he believed he was authorized to have them, Enders reportedly told him that if he wanted the CDs back, he had to request them via a CDC-602 grievance form. (Id. at 29-30.) In response to Knox's inquiry about why Enders had listed the CDs as belonging to other inmates, Enders reportedly told him, "Get away from the office, Knox, before I give you [an] RVR [Rules Violation Report]." (Id. at 33.) Although Plaintiff contested the removal of the four CDs from his cell, he did not contest the removal of the Sony Walkman because he had borrowed it and it did not belong to him. (Id. at 31.) Knox did not have any further conversations with Defendant Enders. (Id. at 33.)

Previously, in 2010, Plaintiff had a physical altercation with Correctional Officer H. Sustaita and filed a civil rights complaint against him. (Compl. 14, ECF No. 1 (referring to Knox v. Sustiata, Case No. 10cv2693-JLS(MDD) (S.D. Cal. filed Dec. 30, 2010).)[2] The case settled in late 2012. (Id. at 19-20.) Knox states that shortly before the events giving rise to the Complaint in this case took place, Sustaita approached him while he was coming out of the chow hall and asked for his name. (Mot. Summ. J. Attach. #3 Gibson Decl. Ex. 1, at 35-36 (Knox Dep.), ECF No. 50.) Plaintiff testified, "I told him my name was Knox and then all this stuff happened." (Id. at 35.) He also states that later in the afternoon on April 17, 2013, Officer Garcia asked him, "What's up with that thing with you and Correctional Officer Sustaita?" (Compl. 13, ECF No. 1.) Knox mentioned his lawsuit against Sustaita and asked, "Was that what all this shit was all about?" (Id. at 14.) Garcia allegedly replied, "Yeah man. I'm just being straight up with you. . . . It would be better if you just leave man." (Id.) Knox contends that because of his prior lawsuit against Sustaita, he was "systematically harassed, segregated and intimidated as

---

[2] Although Knox refers to Officer Sustaita as "Sustiata," the correct spelling of this correctional officer's name appears to be "Sustaita." (See Compl. 19, ECF No. 1.)

reprisal, by all of the named correctional [personnel] at Calipatria State Prison, on 04/16/13 and 04/17/2013." (Id.)

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Like the standard for a directed verdict, judgment must be entered for the moving party "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (citation omitted). "If reasonable minds could differ," judgment should not be entered in favor of the moving party. Id. at 250-51; see also Blankenhorn v. City of Orange, 485 F.3d 463, 470 (9th Cir. 2007).

The parties bear the same substantive burden of proof that would apply at a trial on the merits, including the plaintiff's burden to establish any element essential to his case. See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Anderson, 477 U.S. at 252; Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (alteration in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). The absence of a genuine issue of material fact on an essential element of a claim is sufficient to warrant summary judgment on that claim. Celotex, 477 U.S. at 322-23.

The moving party bears the initial burden of identifying the pleadings and evidence it "believes demonstrate the absence of a genuine issue of material fact." Id. at 323. The nonmoving party then has the burden of establishing, beyond the pleadings, that there is a genuine issue for trial. Id. at 324. To successfully rebut a defendant's properly supported motion for summary judgment, "the plaintiff[] must point to some facts in the record that

demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff['s] favor, could convince a reasonable jury to find for the plaintiff[]." Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323; Anderson, 477 U.S. at 249). Material issues are those that "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Sec. Exch. Comm'n v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In deciding whether any genuine issue of material fact remains for trial, courts must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). While the district court is not required to search the entire record for an issue of fact, the court may nevertheless exercise its discretion to consider materials in the record that are not specifically referenced. Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). When the nonmoving party is proceeding pro se, the court has a duty to consider "all of [the nonmovant's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the nonmovant] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004) (citations omitted).

### III. DISCUSSION

Defendant Enders moves for summary judgment on the grounds that there are no triable issues of material fact that could support a finding that he violated Knox's First

Amendment rights, and in the alternative, that he is entitled to qualified immunity. (Def.'s Mem. P. & A. 12-21, Mot. Summ. J. Attach. #1 ("Def.'s Mem."), ECF No. 50.)

### A. Plaintiff's First Amendment Claim

Defendant Enders argues he is entitled to summary judgment on Plaintiff's First Amendment retaliation claim on the basis that Plaintiff Knox has not presented any evidence to support his claim, and uncontroverted evidence shows Enders did not retaliate against Knox. (Id. at 12-18.) Defendant asserts he was not aware of Plaintiff's lawsuit against Sustaita at the time he searched Plaintiff's cell, and did not learn about the lawsuit until he received the Complaint filed in this action. (Id. at 15-16.) Enders further maintains the search of Knox's cell and confiscation of contraband found in the cell served legitimate penological interests. (Id. at 16-18.) Defendant also contends he was not involved in the decision to transfer Plaintiff from his cell, confine him to quarters, or discipline him for failing to return his morning meal tray on April 17, 2013. (Id. at 14 n.7.) Plaintiff has not filed an opposition to Defendant's motion, but his Complaint was signed under the penalty of perjury. (See Compl. 40, ECF No. 1.) Therefore, the Court may consider Plaintiff's Complaint as evidence pursuant to Rule 56(c)(4) of the Federal Rules of Civil Procedure. Jones, 393 F.3d at 922-24.

The Constitution protects individuals who exercise their First Amendment rights from deliberate retaliation by government officials. See Vignolo v. Miller, 120 F.3d 1075, 1077-78 (9th Cir. 1997); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Because retaliation by prison officials may chill an inmate's exercise of his First Amendment rights, retaliatory conduct is actionable even if it would not otherwise rise to the level of a constitutional violation. See Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989). An action against prison officials for First Amendment retaliation must satisfy the following five elements: (1) "the retaliated-against conduct is protected," (2) "the defendant took adverse action against the plaintiff," (3) there is a "causal connection between the adverse action and the protected conduct," (4) the official's act "would chill or silence a person of ordinary firmness from future First

Amendment activities," and (5) the retaliatory action did not advance a legitimate penological goal. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citations omitted); see also Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

### 1. Protected conduct element

The basis for Plaintiff's remaining claim in this action is that Defendant Enders retaliated against him because he previously filed a civil rights action against Correctional Officer Sustaita. (Compl. 12-14, ECF No. 1.) Filing a lawsuit is protected conduct under the First Amendment. See Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015) ("The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities and as well as a right of meaningful access to the courts."); see also Shepard v. Quillen, 840 F.3d 686, 688 (9th Cir. 2016) ("[A] corrections officer may not retaliate against a prisoner for exercising his First Amendment right to report staff misconduct."). There is no doubt Knox's lawsuit against Sustaita amounted to protected conduct, and Defendant does not dispute this element. The Court finds the first element of a retaliation claim is satisfied.

### 2. Adverse action element

Plaintiff alleges Enders took adverse action against him by searching his cell and confiscating his property. Adverse action is action that would have "a chilling effect" on "a person of ordinary firmness" from exercising his First Amendment rights. Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009). The adverse action needed to satisfy this element need not be so serious as to amount to a constitutional violation. Watison, 668 F.3d at 1114 (citing Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995)). In fact, "the mere threat of harm can be an adverse action" in the retaliation context. Brodheim, 584 F.3d at 1270 (emphasis omitted). Here, Defendant "assumes, without conceding, for purposes of this motion that a cell search and confiscation of property constitute an 'adverse action.'" (Def.'s Mem. at 15 n.8, ECF No. 50 (citing Cejas v. Paramo, No. 14-CV-1923-WQH(WVG), 2017 WL 1166288, at *6 (S.D. Cal. Mar. 28, 2017), report and recommendation adopted, No. 14CV1923-WQH-WVG, 2017 WL 3822013 (S.D. Cal.,

Sept. 1, 2017) ("[A] cell search may nonetheless constitute an adverse action . . . .")).) A jury could reasonably find the cell search and confiscation of Knox's property constituted adverse action. Therefore, this element of a retaliation claim is met.

### 3. Causal connection element

Plaintiff has the burden to establish that his protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct." Brodheim, 584 F.3d at 1271 (citation omitted); see also Hartman v. Moore, 547 U.S. 250, 259 (2006) ("[A § 1983] plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action . . . .") (citations omitted). To establish causation, Knox must "put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [Enders's] intent" in searching Knox's cell and confiscating his property. Shepard, 840 F.3d at 689 (citing Brodheim, 584 F.3d at 1271). Given that a plaintiff can rarely produce direct evidence of retaliatory intent, a plaintiff may rely on circumstantial evidence that permits the inference of retaliation, such as the chronology of events. Watison, 668 F.3d at 1114; see also Pratt, 65 F.3d at 808.

Defendant Enders attests that on April 17, 2013, he was not aware Plaintiff had filed a lawsuit against any CDCR correctional officer, including Officer Sustaita. (Mot. Summ. J. Attach. #4 Enders Decl. at 3-4, ECF No. 50.) He did not find out about Knox's lawsuit against Sustaita until he received the Complaint filed in this case in December 2015, over two years after he searched Knox's cell and confiscated his property. (Id.) Enders also states he was not involved in the decision to transfer Knox from his cell, confine him to quarters on April 16, 2013, or issue an RVR for failing to return his meal tray on April 17, 2013. (Id. at 4.) Defendant attests he did not search Plaintiff's cell, confiscate the property found in the cell, or issue a CDC 128-A counseling chrono for altering state clothing and linen because of Plaintiff's lawsuit against Sustaita, or for any retaliatory reason. (Id.) Knox himself testified during his deposition that he did not believe Enders was involved in the decision to confine him to quarters or transfer him

from A-Yard. (See Mot. Summ. J. Attach. #3 Gibson Decl. Ex. 1, at 39 (Knox Dep.), ECF No. 50.) His only basis for believing Officer Enders searched his cell and confiscated his property in retaliation for filing suit against Sustaita was, "That is the only thing that makes sense because I never did nothing to these guys." (Id. at 37.) Plaintiff testified further as follows:

> Q    Did anyone ever tell you that Officer Enders searched your cell because you filed a lawsuit against Officer [Sustaita]?
>
> A    No, I just suspected it.
>
> Q    Okay. And the same applies to the confiscation of your CDs. You just suspected Officer Enders confiscated your CDs because of this lawsuit?
>
> . . . .
>
> A    Yes.
>
> Q    You just assume that Officer Enders took your CDs because you filed a lawsuit; is that right?
>
> A    Yes.

(Id. at 37-38.) Knox confirmed he did not have any interactions with Defendant Enders either before or after April 17, 2013. (Id. at 38.)

"[M]ere speculation that defendants acted out of retaliation is not sufficient." Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014). Plaintiff has not established a genuine dispute of material fact exists as to any causal connection between his lawsuit against Sustaita and Defendant Enders. The evidence in the record before the Court establishes that Enders was neither a party nor a witness in the lawsuit between Plaintiff and Sustaita. Enders did not know about the lawsuit at the time of the search and confiscation of items found in Plaintiff's cell. Enders could not have acted in retaliation for a lawsuit of which he had no knowledge. See id. at 904-05 (affirming grant of summary judgment, where there was no evidence in the record indicating that defendants

knew about plaintiff's prior lawsuit or that defendants' alleged misconduct was in retaliation for that lawsuit); see also Pratt, 65 F.3d at 808 (finding no causal connection when evidence was insufficient to show that prison officials knew of the conduct giving rise to the alleged retaliatory action); Cejas, 2017 WL 1166288, at *6 ("[Defendant's] knowledge of the grievance is, of course, critical because he could not have searched Plaintiff's cell in retaliation for—or because of—something about which he had no knowledge."). Additionally, even though Knox claims he had an interaction with Sustaita shortly before the incident in question, and Correctional Officer Garcia reportedly told Knox the events giving rise to this case could be attributed to his lawsuit against Sustaita, there is no evidence that Enders acted with a retaliatory motive against Knox.

No reasonable jury could conclude that Knox's lawsuit against Sustaita was a substantial or motivating factor in Enders's search of Knox's cell and confiscation of the contraband located therein. Accordingly, Plaintiff has not raised a triable issue as to the third element of his First Amendment retaliation claim against Enders.

### 4. Chilling effect element

The fourth element of a retaliation claim is satisfied if the adverse action actually chilled or "would chill or silence a person of ordinary firmness from future First Amendment activities." Mendocino Envtl. Ctr. v. Mendocino Cty., 192 F.3d 1283, 1300 (9th Cir. 1999). A plaintiff can establish that an action would silence a person of ordinary firmness by showing the adverse action caused harm that was more than minimal. Watison, 668 F.3d at 1114 (citations omitted). Defendant Enders does not dispute that a cell search and confiscation of personal possessions are sufficient to satisfy this element, and the Court finds it likely an inmate of reasonable firmness would hesitate to pursue grievances against correctional officers if faced with the possibility of a cell search and confiscation of property for doing so. See, e.g., Haddix v. Burris, No. C-12-1674 EMC (pr), 2015 WL 1055768, at *6 (N.D. Cal. Mar. 10, 2015) ("[A] reasonable jury could conclude that knowing that one's cell would be searched if one filed an inmate

appeal would chill a person of ordinary firmness from future First Amendment activities, even . . . where cell searches could be done on a random basis as well as for cause."). Therefore, this element of a retaliation claim is satisfied.

### 5. Legitimate correctional goal element

"The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." Pratt, 65 F.3d at 806. Courts "should 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Id. at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). According to Defendant Enders, retrieving the breakfast tray was necessary because a tray could be used as a weapon, a shield, or to block the cell-door window to prevent officers from seeing inside the cell. (Mot. Summ. J. Attach. #4 Enders Decl. at 2, ECF No. 50.) While inside Plaintiff's cell, Enders observed four CDs, the Sony Walkman, and altered bed sheets and clothing. (Id. at 3.) He states the CD player and CDs were labeled as belonging to another inmate, and constituted contraband due to Plaintiff's C/C status. (Id.)[3] The altered bed sheet and linens also constituted contraband because they could be used to alter an officer's view of the cell. (Id.) Defendant confiscated all contraband, prepared a Cell/Locker Search Receipt, and issued a CDC-128A counseling chrono for altering state clothing and linen. (Id.)

There is no evidence to controvert the conclusion that Defendant's search of Plaintiff's cell and confiscation of the items found in the cell served a legitimate correctional goal of ensuring safety and security of the institution, correctional officers, and inmates. Additionally, Knox conceded during his deposition that Enders properly confiscated the CD player because he was on "C-status" and the CD player belonged to another inmate. (Mot. Summ. J. Attach. #3 Gibson Decl. Ex. 1, at 31, 38 (Knox Dep.),

---

[3] "Contraband" is defined as "anything which is not permitted, in excess of the maximum quantity permitted, or received or obtained from an authorized source." Cal. Code Regs. tit. 15, § 3000.

12

ECF No. 50.) Plaintiff has failed to provide any evidence establishing that Defendant's actions did not reasonably advance a legitimate correctional goal. Therefore, he has not met his burden of showing a triable issue as to this element of a retaliation claim.

### 6. Conclusion

There is no genuine dispute as to any material fact pertaining to Plaintiff's claim that Defendant Enders's search of Knox's cell and confiscation of property was in retaliation for First Amendment activity. Knox cannot show a causal connection between his prior lawsuit against Correctional Officer Sustaita and Enders's actions, nor can he show the absence of a legitimate penological purpose for the search and confiscation of property. The trier of fact could not reasonably find in favor of Plaintiff on the present record, and the absence of a genuine issue of material fact on an essential element of a claim is sufficient to warrant summary judgment on that claim. See Matsushita, 475 U.S. at 586; Celotex, 477 U.S. at 322-23. Accordingly, the Court recommends that summary judgment be **GRANTED**.

## B. Qualified Immunity

Defendant Enders contends that he is entitled to qualified immunity in regard to Knox's First Amendment retaliation claim. (Def.'s Mem. at 18-20, ECF No. 50.) Enders argues a reasonable officer faced with the same situation would not have believed his conduct was unlawful. (Id.)

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012) (citation omitted). When considering a claim for qualified immunity, courts consider (1) whether the facts show that the defendant violated a constitutional right and (2) whether the right was clearly established at the time of the defendant's purported misconduct. See Pearson v. Callahan, 555 U.S. 223, 232 (2009).

Here, the Court has found no genuine dispute exists as to whether Enders violated Knox's First Amendment rights. If no constitutional right has been found to have been

13

13cv2985-WQH(RBB)

violated, "there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 200-01 (2001); see also Nava v. Velardi, Case No.: 15cv1156-AJB(BLM), 2018 WL 3773848, at *19 (S.D. Cal. Aug. 9, 2018) (stating that the court did not address the issue of qualified immunity because it was recommending summary judgment in favor of defendants on the ground that plaintiff did not establish a genuine issue of material fact).

## IV. CONCLUSION AND RECOMMENDATION

For the reasons discussed above, Defendant's Motion for Summary Judgment [ECF No. 50] should be **GRANTED**. This Report and Recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **January 15, 2019**. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before **January 29, 2019**.

The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: December 18, 2018

Hon. Ruben B. Brooks
United States Magistrate Judge